# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MIRON CONSTRUCTION CO., INC.,

    Plaintiff,

v.                                                                                                             Case No. 14-C-306

DUSTEX CORPORATION,

    Defendant.

## ORDER GRANTING [3] DEFENDANT'S MOTION TO DISMISS AND DENYING [11] PLAINTIFF'S MOTION TO CHANGE VENUE/STAY FOR ARBITRATION

Plaintiff Miron Construction Co., Inc., initially filed this action against defendant Dustex Corporation in the Circuit Court for Winnebago County. On March 20, 2014, Dustex removed the matter pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of federal diversity jurisdiction. Miron is a Wisconsin corporation with a principal place of business in Wisconsin, and Dustex is a North Carolina corporation with a principal place of business in Georgia. (Compl. ¶¶ 1–2, ECF No 1-1.) Dustex filed a motion to dismiss for lack of personal jurisdiction on March 27, 2014. (ECF No. 3.) Miron asserts that the Court has personal jurisdiction over Dustex but has also filed a "motion to change venue, or in the alternative to stay to permit arbitration, in the event court finds lack of personal jurisdiction." (ECF No. 11.) For the reasons stated below, Dustex's motion to dismiss will be granted, and Miron's "motion to change venue/stay for arbitration will be denied.

### I. Background

On or about August 10, 2006, Miron entered into a contract with the Board of Trustees of the Municipal Electrical Utility of the City of Cedar Falls, Iowa (CFU) on a publicly bid project to improve a coal-fired steam-generating plant operated by CFU in Iowa ("the Project"). (*Id.* ¶ 5.) As

general contractor, Miron was responsible for completing the Project, which involved demolition work and the furnishing of a "fabric type dust collector addition," or what is commonly known as a "baghouse." (*Id.*) Miron entered into a Purchase Agreement with Dustex on February 2, 2007, under which Dustex agreed to provide Miron both equipment and engineering services related to the baghouse at a price of $1,834,666. (*Id.* ¶ 8.) Dustex fabricated the components of the baghouse at its facilities in Ohio and North Carolina and shipped the components to Miron in Iowa for use on the Project. (Patrick Paul Decl. ¶ 6, ECF No. 5.) CFU was ultimately dissatisfied with the Project and brought arbitration claims against Miron and Dustex, claiming that the baghouse did not perform according to the specifications set forth in its contract with Miron. (Compl. ¶ 9.) On November 7, 2013, an arbitrator held that Miron and Dustex were jointly and severally liable to CFU in the amount of $3,306,3177.13 and that they must equally bear arbitration expenses totaling $194,464.88. (*Id.* ¶ 10.)

Miron's complaint asserts four claims against Dustex: (1) contractual indemnification; (2) alternatively, equitable indemnification; (3) alternatively, breach of contract for failing to perform as specified in the Purchase Agreement; and (4) professional negligence for failing to meet the terms and specifications set forth in CFU's contract with Miron. (*Id.* ¶¶ 11–27.) All claims seek to cover the damages assessed by the arbitrator plus other costs and fees associated with the arbitration proceedings. (*Id.*)

## II. Analysis

### A. Personal Jurisdiction

Plaintiffs bear the burden of proving that personal jurisdiction exists. *Lincoln v. Seawright*, 104 Wis. 2d 4, 310 N.W.2d 596, 599 (1981) (citation omitted). In diversity cases like this one, a

federal district court has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997) (quoting *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995)). Wisconsin's personal jurisdiction analysis involves a two-step inquiry. *Johnson Litho Graphics of Eau Claire, Ltd. v. Sarver*, 2012 WI App 107, ¶ 6, 344 Wis. 2d 374, 824 N.W.2d 127. The court must initially determine whether the Wisconsin long-arm statute, Wis. Stat. § 801.05, would subject Dustex to personal jurisdiction in Wisconsin courts. *Daniel J. Hartwig Assocs., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir. 1990). The long-arm statute is to be liberally construed in favor of exercising jurisdiction. *Lincoln*, 310 N.W.2d at 599. If the plaintiff satisfies step one, the court must then determine whether its exercise of personal jurisdiction under § 801.05 would violate the due process requirements of the Fourteenth Amendment. *Id.* The plaintiff need only establish a *prima facie* case of personal jurisdiction, and for the sole purpose of deciding Dustex's motion, the Court resolves factual disputes in the plaintiff's favor. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).

Miron initially asserted that the Court has personal jurisdiction over Dustex because "Dustex knowingly and voluntarily contracted with Miron, a Wisconsin corporation, and because Dustex committed acts or omissions that led to injury to Miron within the State of Wisconsin." (Compl. ¶ 3.) This assertion resembles Wis. Stat. § 801.05(4), which confers jurisdiction under the long-arm statute "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant," provided that either "(a) [s]olicitation or service activities were carried on within this state by or on behalf of the defendant; or (b) [p]roducts, materials, or things processed, serviced, or manufactured by the defendant were used or consumed

within this state in the ordinary course of trade." Miron has abandoned this theory and instead relies solely on Wis. Stat. § 801.05(5)(e), which provides for personal jurisdiction where the action "[r]elates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred."

Under this new theory, Miron asserts that personal jurisdiction exists because even though Dustex sent the materials constituting the baghouse directly to Iowa, Dustex sent "contract deliverables" to Miron's offices in Wisconsin on at least 51 occasions. (*See* ECF Nos. 13-3 to 13-54.) These deliverables consisted of items that were necessary to the fabrication of the baghouse, including general arrangement drawings, structural steel drawings, erection drawings, electrical drawings, schematics, piping and instrumentation diagrams, and operation manuals. Dustex sent these items to Miron's Project Manager, Mike Ledvina, who reviewed them at the Wisconsin office. (Ledvina Decl. ¶ 5, ECF No. 13.) Ledvina asserts that Miron reviewed each of the items, made notes, and then sent them to CFU's Engineer, Brown Engineering, Inc., for its review and approval. (*Id.*) Brown Engineering, which appears to have been located in Des Moines, Iowa (Purchase Agreement at 1, ECF No. 13-2), would then provide direction to Dustex, and Dustex would in turn produce a final version of the drawing or item and send that version back to Ledvina. (*Id.*) To complete the process, Ledvina would again send the drawing or item to Brown Engineering for final approval. (*Id.*) Miron asserts that these deliverables constitute "goods" and "things of value" within the meaning of Wis. Stat. § 801.05(5)(e). Further, Miron asserts that this action "relates to" the contract deliverables because the faulty baghouse was constructed on the basis of those deliverables.

Dustex denies that the deliverables constitute "goods" because they were documents related to services provided to Miron by Dustex outside of Wisconsin. Dustex points to the Purchase Agreement, which separately lists "Equipment and Material Supplied by Dustex Systems" and "Services Supplied by Dustex Systems." (Purchase Agreement at 2–4, ECF No. 13-2.) Under the "Services" heading, the Agreement lists "Engineering services to include general arrangement drawings, equipment load diagrams, erection assembly drawings, process and instrumentation diagrams, electrical elementary drawings, and field interconnection drawings; operation and maintenance manuals and spare parts list." (*Id.* at 4.) Under the "Equipment and Material" heading, the Agreement lists a variety of structural components and only once tangentially refers to drawings ("Access platforms around new breaching and [sic] shown in spec drawing"). (*Id.* at 3.) Dustex asserts that this distinction between equipment/materials and services is consistent with its proposal (Proposal at 2, ECF No. 13-1) and with Miron's understanding of the Agreement (*see* Compl.¶ 8 ("Pursuant to the Purchase Agreement, Dutex [sic] agreed to provide Miron both equipment and certain engineering services related to the Baghouse at a price of $1,834,666.")). Dustex also asserts that the contract deliverables were not "things of value" because there is no market for drafts of engineering documents for baghouses.

Under Wisconsin law, courts interpret a statute according to its plain meaning. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citation omitted). In addition, statutory language "is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related

statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* ¶ 46 (citation omitted). "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* (citation omitted).

Since § 801.05 does not define "goods" or "things of value," the Court must look to other sources. In the context of this case, which involves a commercial contract for goods and services, the Uniform Commercial Code (UCC) is instructive. The Wisconsin UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (ch. 408) and things in action." Wis. Stat. § 402.105(1)(c); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "goods" to mean "[t]angible or movable personal property other than money; esp., articles of trade or items of merchandise"). The UCC Official Comments indicate that a good is an item that is intended for sale. *See* Official Comment to Wisconsin UCC § 1 (explaining that growing crops and the young of animals are "goods' because they are frequently intended for sale"); *see also GFI Wisconsin, Inc. v. Reedsburg Util. Comm'n*, 440 B.R. 791, 800 (W.D. Wis. 2010) (holding that electricity qualified as a "good" under the UCC in part because it is "bought and sold in the marketplace"). Services do not qualify as goods under the UCC. *See Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 35, 276 Wis. 2d 361, 688 N.W.2d 462 (observing that the UCC does not apply to service contracts). Thus, goods are typically identified as "tangible" or "movable" items, they are intended for sale, and they are distinct from services.

The Court concludes that the engineering drawings and other documents produced by Dustex do not qualify as goods under the statute. Although the drawings and other items were tangible and movable, they were wholly connected to the services performed by Dustex outside of

Wisconsin. The Purchase Agreement listed the production of the documents under the "Services" heading, and the documents being sent to Miron were works in progress. As Ledvina explains, Dustex sent the documents to Miron in Wisconsin for review, but the documents were then sent to Brown Engineering for final approval. (Ledvina Decl. ¶ 5, ECF No. 13.) In effect, the documents Dustex sent to Miron were merely communications regarding the services being provided by Dustex in other states. The definition of goods for purposes of § 801.05 cannot be so broad as to include communications from one company to another.

Section 801.05 also does not define "things of value," but in dicta, the Wisconsin Supreme Court suggested that a warehouse receipt, which is "ordinarily negotiable," is a "thing of value," but a non-negotiable or assignable contract for the sale of silver may not qualify. *Afram v. Balfour, Maclaine, Inc.*, 63 Wis. 2d 702, 218 N.W.2d 288, 293–94 (1974) (addressing identical language in Wisconsin's predecessor personal jurisdiction statute, Wis. Stat. § 262.05). Other district courts in this Circuit have held that the definition was satisfied by an MRI system, *see Shared Med. Equip. Grp., LLC v. Simi Valley Hosp. & Healthcare Servs.*, No. 13-CV-631, 2014 WL 713108, at *3 (W.D. Wis. Feb. 25, 2014), and stock certificates, *see Mid-States Mortgage Corp. v. Louie*, 841 F. Supp. 871, 874–75 (E.D. Wis. 1993).

Although this case law is not dispositive, it instructs that "thing of value" should not be construed as broadly as Miron proposes. The Court agrees with Dustex that an item must have some amount of objective (i.e. market) value to constitute a "thing of value," otherwise the definition would be satisfied by any mailed item and almost every company doing business or communicating with a Wisconsin corporation would satisfy the long-arm statute. Here, although Dustex's engineering *services* were undoubtedly valuable, the draft documents Dustex sent to Miron

did not have any appreciable market value. As noted above, the documents were more akin to communications than final products. In addition to being works in progress, the documents were drafted to comply with specifications for one particular baghouse in Iowa, and it is highly unlikely that any third party would find them valuable. In short, these documents do not contain transferable monetary value like an MRI machine or stock certificates, and the Court concludes that they do not satisfy the statutory definition of "things of value." Miron has thus failed to establish a *prima facie* case of personal jurisdiction under Wisconsin's long-arm statute, and the Court does not reach the due process inquiry.

**B. Transfer of Venue/Stay for Arbitration**

Miron has alternatively requested transfer of this action to the Northern District of Iowa pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses [and] in the interest of justice." If the Court denies this request, then Miron alternatively requests that the Court enter a stay so that it may pursue its claims through arbitration. District courts have broad discretion to transfer venue under either 28 U.S.C. §§ 1404(a) or 1406(a). *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). If it serves the interest of justice, this Court may transfer venue even though it does not have personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Miron contends that transfer to the Northern District of Iowa is fundamentally fair to both parties because Dustex has significant contacts there, many of the material witnesses are located there, the events giving rise to the present lawsuit occurred there, and Dustex is litigating two other cases related to this dispute there. Miron further argues that transfer is appropriate because the lawsuit is in its infancy and a federal judge in Iowa would be capable of applying Wisconsin law, as the Purchase Agreement requires. Dustex does not directly challenge these assertions, but it

argues that dismissal is appropriate because unlike the plaintiff in *Goldlawr*, Miron has not asserted that it risks losing its cause of action if the case is dismissed. Absent a potential injustice, Dustex asserts that there is no justification for court action. Dustex also contends that dismissal is appropriate because Miron had no basis upon which to believe that jurisdiction would be appropriate in Wisconsin when it filed suit. *See Cote*, 796 F.2d at 985 (affirming dismissal of plaintiff's claim even though it barred her from filing in another jurisdiction because "[e]lementary prudence would have indicated to her lawyer that . . . there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants").

Although the Northern District of Iowa may be an appropriate forum for this lawsuit, the Court agrees with Dustex that Miron had little basis for filing suit here in Wisconsin. Miron abandoned its initial theory of jurisdiction as soon as Dustex filed a motion to dismiss, and Miron then advanced a theory that had minimal support in the language of Wisconsin's long-arm statute and the accompanying case law. Miron's decision to file suit in Wisconsin increased the cost of litigation for both parties, and transferring the case cannot undo this harm. The Court concludes that dismissal is appropriate here, as "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction." *Cote*, 796 F.2d at 985. Miron has not asserted that dismissal will bar its claim, and if Miron seeks to file suit against Dustex in the Northern District of Iowa, it may serve a complaint that states a reasonable basis for jurisdiction over Dustex.

Additionally, the Court denies Miron's request to stay the case so that it may arbitrate the claims. Miron asserts on one hand that it would prefer to litigate this matter and that the Court should only consider granting a stay if jurisdiction does not exist, but on the other hand it argues that

the Court may grant its motion to stay before resolving the pending motion to dismiss for lack of personal jurisdiction. Miron cannot have it both ways. Since the Court has determined that it does not have personal jurisdiction over Dustex, the Court may not address any issues raised in Miron's complaint and must dismiss the action. Miron asserts that it may seek to confirm its arbitration award in this Court, should it succeed at arbitration, but that is speculative at this point. Miron's request for a stay will be denied.

### III. Conclusion

Dustex's motion to dismiss for lack of personal jurisdiction (ECF No. 3) is hereby GRANTED, and Miron's "motion to change venue, or in the alternative to stay to permit arbitration, in the event court finds lack of personal jurisdiction" (ECF No. 11) is hereby DENIED. This action is dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this ___3rd___ day of July, 2014.

      s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court